[No. 9969-5-III. Division Three. September 3, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ESTEBAN ESTRADA CERVANTES, *Appellant*.

*Thomas Bothwell* and *Prediletto, Halpin, Cannon, Scharnikow & Bothwell, P.S.,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Douglas S. Haynes, Deputy,* for respondent.

SHIELDS, J. — Esteban Cervantes was convicted of one count of possession of cocaine with intent to deliver and one count of possession of heroin with intent to deliver. He contends on appeal the court erred in denying his motion to suppress his translated statements to the police. He argues the police improperly used a potential codefendant as an interpreter for advising him of his rights and for conducting custodial interrogation. We agree and reverse.

On January 11, 1989, police officers executed a search warrant at a Yakima residence. After knocking and receiving no response, the police forced the door open. They found three Hispanic males in the living room: one sleeping on the couch and two sleeping on the floor. The three men were 19-year-old Alvaro Cardinas, his younger brother Rene, and 21-year-old Esteban Cervantes. The police found 21 packages of heroin and 10 packages of cocaine in the refrigerator, 5 packages of cocaine in a cup on a shelf in the living room, a gram scale, and a receipt

for payment of a utility bill for the premises in Alvaro Cardinas' pocket when they searched him.[1] The only item the police found connecting Mr. Cervantes to the residence was a key to the padlock on the garage, in which no drugs were found.

After frisking and handcuffing the three men, Detective Sergeant Howard Cyr asked if any of the men spoke English. Alvaro and Rene Cardinas indicated they did; consequently, Detective Cyr advised them of their rights in English. He did not attempt to advise Mr. Cervantes of his rights and could not remember whether he had given Mr. Cervantes the Spanish advice of rights card to read.[2] He did hand Alvaro Cardinas the English advice of rights card and asked Mr. Cardinas to translate them into Spanish for Mr. Cervantes.

At the suppression hearing, Mr. Cardinas testified he read both sides of the advice of rights card to Mr. Cervantes, and claimed Mr. Cervantes responded, "I already know all that . . . I've been through it before" and "They got me now." Mr. Cervantes testified[3] Mr. Cardinas only read him the side with the advice of rights on it, and not the other side concerning the waiver of rights. Detective Cyr could not testify Mr. Cardinas read either all the rights on one side of the card or the waiver side of the card to Mr. Cervantes.

After Mr. Cervantes had been advised of his rights by Mr. Cardinas, Detective Cyr testified he questioned Mr. Cervantes in English accompanied by hand gestures. Pointing to the drugs, he asked Mr. Cervantes if they were his. He testified Mr. Cervantes said "Yes." He asked

---

[1]At trial, the landlord identified Alvaro Cardinas as the renter of the house. Mr. Cardinas testified at the suppression hearing and at trial that he had lived there for about 1 week before the execution of the warrant.

[2]In any event, Mr. Cervantes testified he cannot read Spanish, cannot speak or read English, and only had 3 years of formal education.

[3]Mr. Cervantes testified through a court appointed interpreter at both the suppression hearing and the trial.

Mr. Cervantes if he sold drugs. He claims Mr. Cervantes answered "No. Use." He then asked Mr. Cervantes if he injected drugs, gesturing toward his arm, and Mr. Cervantes answered "No." He asked if Mr. Cervantes snorted drugs, putting his finger to his nose, and Mr. Cervantes answered "Yes."

Mr. Cervantes testified the detective asked him in a single question if the drugs were his and if he used them. Mr. Cervantes testified he answered he used drugs, but never said the drugs were his. To the detective's questions whether he injected or snorted drugs, Mr. Cervantes said he indicated he used drugs through the nose.

Detective Cyr then used Mr. Cardinas as an interpreter to conduct further interrogation. He testified he told Mr. Cardinas to ask Mr. Cervantes if he dealt drugs. Mr. Cardinas, however, testified he was told to ask Mr. Cervantes if he used the drugs and translated Mr. Cervantes' answer that he snorted them but did not use a needle. Detective Cyr then testified he also told Mr. Cardinas to ask Mr. Cervantes if the drugs were his. Mr. Cardinas testified he did so and translated Mr. Cervantes' answer: "Yes, they're mine." Detective Cyr then testified the final question he told Mr. Cardinas to ask was why the drugs were individually packaged. Mr. Cardinas testified he did so and translated Mr. Cervantes' response: "It's bagged up so I won't overdose."

. Mr. Cervantes' testimony about this further interrogation indicated Mr. Cardinas asked him how long he had been living there and he answered he had been living there about a month. Mr. Cardinas then told the detective something in English, but he did not understand. He testified Mr. Cardinas then asked him if the drugs were his and he answered they were not. Mr. Cardinas again told the detective something in English, but he did not understand. He testified Mr. Cardinas then asked if he used drugs and he answered yes, but the drugs were not his. Mr. Cardinas once more told the detective something in English, but he did not understand. Finally, he testified

Mr. Cardinas asked him why the stuff was bagged up like it was and he answered he did not know the drugs were there or why they were bagged that way; and Mr. Cardinas again told the detective something in English, but he did not understand. Mr. Cervantes was charged with one count of possession of cocaine with intent to deliver and one count of possession of heroin with intent to deliver; Mr. Cardinas was not charged and was released.

After the suppression hearing, the court concluded it was not "decisive" that Mr. Cervantes may not have had the waiver part of his advice of rights read to him. The court found Mr. Cervantes understood his rights, waived them and made his statements voluntarily and held that what the answers were was an issue of credibility for the jury. The case proceeded to trial and the jury found Mr. Cervantes guilty.

Mr. Cervantes contends his translated statements made in response to Detective Cyr's translated questioning should have been suppressed. He argues it is inappropriate for the police to use a potential codefendant as a translator. Mr. Cervantes asks this court to make the use of a biased interpreter impermissible during a custodial interrogation.

Stated more broadly, the issue is whether a person with interests conflicting with those of a defendant may be used to advise the defendant of his rights, inquire into the understanding and waiver of those rights and translate questions and answers in a custodial interrogation when there are no safeguards in place to assure proper translation. This is an issue of first impression in Washington. We find no cases from other jurisdictions which are directly on point.

It is generally recognized *courts* should not make use of a biased interpreter during trial proceedings. Whenever possible, an interpreter should be entirely disinterested. 21 C.J.S. *Courts* § 110, at 129 (1990). Whether a person is too interested in a proceeding to be qualified as an interpreter is ordinarily within the discretion of the trial court.

*State v. Bell*, 57 Wn. App. 447, 455, 788 P.2d 1109 (1990). For example, *Prince v. Beto*, 426 F.2d 875, 877 (5th Cir. 1970) held the trial court's appointment of the victim's husband as interpreter for the victim in the criminal trial of her alleged assailant for rape constituted fundamental unfairness to the defendant and violated due process. *Beto*, at 876-77 noted:

> While the choice of a husband to interpret for a wife would normally be, at most, an abuse of the trial court's discretion, [the husband's] appointment under the facts of the instant case passes "the line of tolerable imperfection and fall[s] into the field of fundamental unfairness." . . . One can imagine few situations in which there would be a greater potential for bias by an interpreter. The trial court's appointment injected an intensely interested party into the center of an emotion-packed criminal trial to interpret the testimony of the only witness to the alleged offense. This conduct is intolerable.

(Footnotes omitted.)

*Balderrama v. State*, 433 So. 2d 1311 (Fla. Dist. Ct. App. 1983) reversed a conviction because the defendant's brother/codefendant, who had implicated the defendant as the main offender, was used as the defendant's interpreter at a change of plea hearing. *Balderrama* noted, at page 1313, there were no means available to verify the brother's questioning in Spanish was a true translation of the trial court's interrogation.

The present case graphically illustrates a situation with greater potential for bias.[4] Alvaro Cardinas, as renter of the residence, had a clear motivation to supply the police with a "confession" by Mr. Cervantes the drugs were his. Here, Mr. Cervantes' "confession" was the only evidence which supports his constructive possession of them. That was the foundation of the State's case against Mr. Cervantes, and the apparent basis of the otherwise inexplicable decision not to charge Alvaro Cardinas. But for his alleged admissions, translated by Alvaro Cardinas,

---

[4]No emergency required the procedure used here by the arresting officers. Mr. Cervantes could have been transported to the police station and a neutral interpreter could have been obtained.

Mr. Cervantes was merely present in the residence and not in constructive possession of the drugs. No safeguards existed to ensure the interpreter Mr. Cardinas, a more likely suspect, was honestly and accurately conveying information between Detective Cyr and Mr. Cervantes.

■ If it is fundamentally unfair for a trial court to appoint a biased interpreter in a courtroom setting, it cannot be less unfair for police to use a potential codefendant as an interpreter in the process of advising an arrestee of his rights, determining he understands them and voluntarily waives them and then conducting custodial translated interrogation at the scene of the crime. We hold the police procedure used in this case was fundamentally unfair and violated due process. Mr. Cervantes' statements in response to questioning by Detective Cyr should have been suppressed.

■ We next consider whether the admission of Mr. Cervantes' statements constituted harmless error. *Arizona v. Fulminante*, ___ U.S. ___, 113 L. Ed. 2d 302, 111 S. Ct. 1246, *reh'g denied*, ___ U.S. ___, 114 L. Ed. 2d 472, 111 S. Ct. 2067 (1991). To find an error affecting a constitutional right harmless, the reviewing court must find it harmless beyond a reasonable doubt. *Arizona v. Fulminante*, 111 S. Ct. at 1257; *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 828, 24 A.L.R.3d 1065, *reh'g denied*, 386 U.S. 987 (1967). *State v. Guloy*, 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986) adopted the "overwhelming untainted evidence" standard in harmless error analysis; therefore, we look only at the untainted evidence to determine if it is so overwhelming it necessarily leads to a finding of guilt.

[3] No drugs were found on Mr. Cervantes; therefore, the State had to prove his constructive possession of those found in the refrigerator and the cup on the shelf. To do so, the State had to show Mr. Cervantes had dominion and control over the drugs or the premises where they were found. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Establishing mere presence at the premises

702

and proximity to the drugs alone will not suffice. *State v. Spruell*, 57 Wn. App. 383, 389, 788 P.2d 21 (1990). Here, absent Mr. Cervantes' alleged admissions, the State proved only that Mr. Cervantes was present at the house and had a key to the garage. On the record before us, the erroneous admission of Mr. Cervantes' involuntary "confession" was anything but harmless; it was essential to the State's case.

Due to our disposition of the case on the constitutional issue, we do not reach Mr. Cervantes' other assignments of error. The court's decision denying the motion to suppress is reversed. Because Mr. Cervantes' "confession" was the only evidence which established his possession of the drugs, the charges against him are dismissed.

GREEN, C.J., and MUNSON, J., concur.