[No. 20870-2-III. Division Three. January 28, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. AARON JOSEPH CUNNINGHAM, *Appellant*.

222

*Janet G. Gemberling*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

SCHULTHEIS, J. — Aaron Cunningham appeals his conviction for taking a motor vehicle without permission (TMVWOP). He first maintains his sentence was based on

an erroneous offender score. The State concedes this is partially correct because the trial court improperly included the current offense as a point in Mr. Cunningham's criminal history. Next, Mr. Cunningham claims the trial court erred when it denied his CrR 3.5 motion to suppress based on statements made without the benefit of *Miranda*[1] warnings. We affirm his conviction; however, we remand for correction of the offender score and sentence.

## FACTS

On April 7, 2000 just before 1 A.M., Georgia and Cody Cooper reported their car was stolen from their driveway in Spokane County. Officer John O'Brien heard the description of the stolen vehicle over his police radio and spotted a car matching the description traveling in the opposite direction. He made a U-turn and followed the vehicle, calling in the license plate to dispatch as he drove. Once dispatch confirmed the vehicle was stolen Officer O'Brien activated his emergency lights. The vehicle stopped and the driver exited and ran. Officer O'Brien radioed a description of the driver as a light-skinned Hispanic male, in his early twenties, with dark hair and wearing a blue and white flannel shirt. Officer O'Brien then turned his attention to the vehicle's passenger, who had not fled.

Officer Anthony Meyer heard Officer O'Brien's description of the driver of the stolen vehicle over his police radio. Officer Meyer soon spotted a man matching the description jogging in his patrol area. The officer contacted the young man as he was knocking on the door of a residence. The man wore a gray sweatshirt but was carrying a blue and white flannel shirt. He was breathing hard as if he had been running. When Officer Meyer asked the young man his name, he said it was Eric Dale Cakey and that his date of birth was September 28, 1975. When the officer asked how old he was, the young man said he was 17. This answer was not consistent with the birth date provided. When asked

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

what he was doing at the residence the young man said he was going to visit a friend. After contacting the home's residents the officer determined the young man was not telling the truth. Officer Meyer handcuffed the young man until his true identity could be determined. The officer waited to determine whether Officer O'Brien and the passenger could identify this young man as the driver of the stolen vehicle.

Officer O'Brien and the passenger arrived approximately 45 minutes after the suspect had been contacted by Officer Meyer. The suspect was identified by both Officer O'Brien and the passenger as the driver of the stolen vehicle. At that time the suspect was read his *Miranda* rights and voluntarily waived them. He was later identified as Aaron Joseph Cunningham.

Mr. Cunningham was arrested and later charged with TMVWOP. Just prior to his jury trial, Mr. Cunningham filed a CrR 3.5 motion to dismiss statements made at the scene of his arrest. The motion was denied. Mr. Cunningham was found guilty as charged. He received a drug offender sentencing alternative (DOSA) sentence based on an offender score of 9. This timely appeal followed.

ANALYSIS

1. Offender Score

■ Mr. Cunningham first complains he was sentenced using an improper offender score. Prior to July 1, 1997, the definition of criminal history included:

[A] defendant's other prior convictions in juvenile court if . . . (ii) the defendant was fifteen years of age or older at the time the offense was committed; and (iii) with respect to prior juvenile class B or C felonies or serious traffic offenses, the defendant was less than twenty-three years of age at the time the offense for which he or she is being sentenced was committed.

Former RCW 9.94A.030(12)(b) (1996). As of July 1, 1997, the statute was changed and criminal history was defined as "the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." Former RCW 9.94A.030(13) (1999). The amendment does not apply retroactively for offender score calculation purposes. *State v. Smith*, 144 Wn.2d 665, 674-75, 30 P.3d 1245, 39 P.3d 294 (2001). For this reason, Mr. Cunningham argues the sentencing court may not revive adjudications that washed out when he turned 23 because of the law in effect at the time the juvenile offenses occurred.

■ There is no dispute regarding Mr. Cunningham's criminal history or the fact that he was born on September 29, 1976. The State correctly argues that because Mr. Cunningham was only 20 years old when the law was changed in 1997, the prior juvenile offenses did not wash out. This court has specifically addressed the argument set forth by Mr. Cunningham in *State v. Perry*, 110 Wn. App. 554, 42 P.3d 436 (2002). Mr. Perry, like Mr. Cunningham, had been adjudicated as guilty in juvenile court on various felony offenses at a time when the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, governing adult offenders counted juvenile offenses in the offender score only until the offender was 23 years old. Mr. Perry turned 23 years old in 1998, the year *after* the amendment was made to the statute. Former RCW 9.94A.030(12) (1996). In *Perry*, this court noted that the defendant's washout of his prior juvenile criminal history did not vest before the law changed in 1997. *Id.* at 559-60. As a result, the current law regarding criminal history applied to Mr. Perry's criminal history and offender score. *Id.* at 560. Because the facts of this case are nearly identical to those in *Perry*, we determine Mr. Cunningham's juvenile offenses do not wash out under the prior version of the SRA.

■ Although Mr. Cunningham argues his two community supervision violations should not have counted as criminal history, there is no evidence that they were so

counted. The six juvenile violations were scored at one-half point each. *See* former RCW 9.94A.360(7) (1999). The total of these three points and one point for each of Mr. Cunningham's five prior adult convictions is an offender score of eight, which is proper. The State agrees the trial court erred when it counted as one point the current offense with which Mr. Cunningham was found guilty. As a result, the judgment and sentence should be remanded for correction.

## 2. Suppression Motion

■ Next, we are asked to determine whether the trial court erred when it denied Mr. Cunningham's motion to suppress statements made to police officers prior to receiving his *Miranda* warnings. Denial of a suppression motion is reviewed by independently evaluating the record to determine whether substantial evidence supports the findings and whether the findings support the conclusions. *State v. Broadaway*, 133 Wn.2d 118, 130, 942 P.2d 363 (1997).

■ Mr. Cunningham complains the trial court failed to issue written findings of fact and conclusions of law after the CrR 3.5 hearing. It is true the findings were not entered until after the appellant's brief was filed. However, failure to enter findings required by CrR 3.5 is considered harmless *error if the court's* oral findings are sufficient to permit appellate review. *State v. Smith*, 67 Wn. App. 81, 87, 834 P.2d 26 (1992), *aff'd*, 123 Wn.2d 51, 864 P.2d 1371 (1993). Here, the court's oral findings are sufficient. We also note the written findings were promptly filed once the State was notified of the error and find the delay was not intentional. An affidavit from the deputy prosecutor handling this case explained the written findings were drafted and sent to Mr. Cunningham's trial counsel just prior to the original sentencing hearing. When Mr. Cunningham failed to appear for sentencing, the written findings from the suppression hearing were not filed. Because he was not immediately

found, Mr. Cunningham was not sentenced until six months later. The original written findings apparently remained in defense counsel's possession. When the written findings and conclusions were finally presented to the trial court, defense counsel did not object to their contents. We take this opportunity to remind counsel that the timely filing of findings and conclusions after a suppression hearing is not an empty formality. It is required by court rule. CrR 3.5(c). Written findings and conclusions facilitate and expedite appellate review of the issues. *State v. Head*, 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998) (addresses findings entered at conclusion of bench trial). They also enable the State and the defendant to focus on the issues supported by the record, which will prevent the pursuit of issues that are obviously lacking merit. *Id.* at 623.

In this case, appellate counsel, who had already filed the initial brief in the matter, was not notified when the findings and conclusions from the CrR 3.5 hearing were finally filed. Regarding the late filing of the findings and conclusions, we agree with Division One when it determined that once appellate counsel has been appointed, "the State should also give that attorney notice of the presentation and provide him or her with copies of the proposed findings and conclusions so that appellate counsel can choose whether or not to participate." *State v. Corbin*, 79 Wn. App. 446, 451, 903 P.2d 999 (1995). At a minimum, appellate counsel should receive a copy of the filed findings and conclusions.

Finally, Mr. Cunningham contends the trial court erred in failing to suppress various statements he made to police officers on the night in question. The information Mr. Cunningham wanted to suppress was the false name and birth date, the fact he said he did not have an identification card, and the fact he admitted he had been previously stopped for a domestic violence violation in Tacoma.

The Fifth Amendment right against compelled self-incrimination requires police to inform a suspect of his or her *Miranda* rights before a custodial interrogation.

*State v. Baruso*, 72 Wn. App. 603, 609, 865 P.2d 512 (1993). A suspect is deemed in custody for *Miranda* purposes as soon as his or her freedom " 'is curtailed to a "degree associated with formal arrest." ' " *State v. Watkins*, 53 Wn. App. 264, 274, 766 P.2d 484 (1989) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983))). That determination is based on how a reasonable person in the same circumstances would have perceived the situation. *Id.* (quoting *Berkemer*, 468 U.S. at 442). The *Miranda* exception applies when the interview or examination is: (1) custodial, (2) through interrogation, (3) by a state agent. *State v. Sargent*, 111 Wn.2d 641, 647-53, 762 P.2d 1127 (1988). In most cases, the term custodial refers to whether the suspect's freedom of movement was restricted at the time of questioning. *Id.* at 649-50. An interrogation occurs when the investigating officer should have known his or her questioning would provoke an incriminating response. *Id.* at 650-52; *State v. Post*, 118 Wn.2d 596, 605-06, 826 P.2d 172, 837 P.2d 599 (1992).

██ Mr. Cunningham admits a routine investigative encounter that is supported by reasonable suspicion does not require *Miranda* warnings. *State v. Phu Huynh*, 49 Wn. App. 192, 201, 742 P.2d 160 (1987). For *Miranda* purposes, the fact that a suspect is not free to leave during the course of an investigative stop does not make the encounter comparable to a formal arrest. *State v. Walton*, 67 Wn. App. 127, 130, 834 P.2d 624 (1992). An investigative encounter, unlike a formal arrest, is not inherently coercive since the detention is presumptively temporary and brief, relatively less "police dominated," and does not lend itself to deceptive interrogation tactics. *Id.* To qualify as a *Terry* stop, the detention must be "reasonably related in scope to the justification for [its] initiation." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

██ Although it is unfortunate that Officer Meyer and the suspect had to wait approximately 45 minutes for

Officer O'Brien to identify Mr. Cunningham as the suspect seen running from the stolen vehicle, the facts of this case indicate the detention of Mr. Cunningham was comparable to a limited *Terry* stop. It is clear that Officer Meyer's initial contact with Mr. Cunningham was a routine investigative encounter supported by reasonable suspicion. The officer testified that his questions to the suspect involved only an attempt to ascertain the man's true identity.

Mr. Cunningham asserts Officer Meyer should not have left him in handcuffs for approximately 45 minutes. He claims this action proves the investigation was more than a limited *Terry* stop. We disagree. Because the suspect would not cooperate with the officer in identifying himself, and because there was a reasonable suspicion this person was the man observed driving the stolen vehicle, it was reasonable for the officer to believe the young man was at risk to again flee the scene of an investigative stop. These are the reasons given by Officer Meyer for handcuffing Mr. Cunningham, which was appropriate. *See State v. Williams*, 102 Wn.2d 733, 740-41, 689 P.2d 1065 (1984) (handcuffing or secluding suspect may be appropriate in some circumstances but must be justified by reasonable belief suspect is dangerous or may flee the scene). The 45-minute wait was a result of Mr. Cunningham's refusal to stop and talk with Officer O'Brien at the scene of the original traffic stop. Mr. Cunningham should not now be heard to complain about a delay that was caused by his own actions.

Although he was not free to leave during the 45-minute delay, Officer Meyer testified Mr. Cunningham was not under formal arrest until after Officer O'Brien identified him as the driver of the stolen vehicle and read him his constitutional rights. The court's findings are supported by substantial evidence and the findings support the conclusions. Reviewing all the facts and circumstances from the record it is clear the trial court did not err when it denied Mr. Cunningham's motion to suppress statements made prior to his arrest.

Affirmed; remanded for correction of the offender score and sentence.

KATO, A.C.J., and KURTZ, J., concur.

Reconsideration denied March 18, 2003.