[No. 29239-4-II.   Division Two.   April 27, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. DUFF RICHARD FRANCE, *Appellant*.

*Lise Ellner*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *John M. Sheeran, Deputy*, for respondent.

Quinn-Brintnall, C.J. — A jury convicted Duff Richard France of violating a no-contact order and fourth degree assault. France claims that the trial court erred by admitting statements he made before receiving *Miranda*[1] warnings. France also claims that the jury instructions violated his right to due process and that the trial court prejudiced him by entering CrR 3.5 findings after he appealed. We affirm the fourth degree assault conviction. But we agree that France's statements were the product of a custodial interrogation and should have been excluded. Thus, we reverse his conviction for violating a no-contact order and remand for a new trial.

## FACTS

On Sunday, April 7, 2002, at approximately 9:00 A.M., Pierce County Deputy Sheriff Michael F. McGinnis was on duty and driving along Mountain Highway in Spanaway when he noticed France walking alongside the highway. McGinnis recognized France from several previous encounters. Two minutes after McGinnis passed France, a dispatcher sent a radio call that France was a suspect in a domestic violence incident. McGinnis turned his patrol car around and stopped France.

McGinnis asked France about the reported domestic violence and told France that they needed to "clear it up" before he would let France leave. 1 Report of Proceedings (RP) at 34. France then told McGinnis that he and the victim, Ellen Robinette, argued earlier that morning about whether France owed her money. France also told McGinnis that he was living with Robinette and that he knew there was a no-contact order prohibiting him from contacting Robinette. Deputy Roger Fuller then arrived but immediately left to speak with Robinette.

Fuller went to Robinette's trailer and noticed that Robinette looked distressed and upset. Robinette told Fuller that on the previous Friday, France came to her

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

trailer. Robinette asked France to leave, but he refused. The next day, on Saturday morning, Robinette asked France again to leave, but France again refused. Robinette left. She returned later Saturday afternoon and again asked France to leave. He refused. The next morning, Robinette asked France for the fourth time to leave and told him that she would call the police if he did not. France threatened to "beat her up" if she called the police. 2 RP at 100. Robinette said she was going to call the police. France then slapped her and left immediately afterward.

Fuller radioed McGinnis that Robinette's statement provided probable cause to arrest France. McGinnis arrested France and then read him his *Miranda* rights. France invoked his rights and did not speak to police further about this incident.

On May 7, 2002, the State charged France with one count of violating a no-contact order and one count of fourth degree assault. During the CrR 3.5 hearing, France argued that his first statement about his knowledge of the no-contact order should be suppressed because it was made during a custodial interrogation before McGinnis read France his *Miranda* rights. Following a CrR 3.5 hearing, the trial court ruled that the statements were made during a preliminary investigatory stop and, therefore, no *Miranda* readings were required and the statement was admissible.

The jury convicted France on both counts. The jury also returned a special verdict, finding that the no-contact order violation was an assault, which raises the no-contact violation conviction from a misdemeanor to a felony. France appeals.

## ANALYSIS

### NECESSITY OF *MIRANDA* WARNINGS

France claims that his statements to McGinnis were part of a custodial interrogation and that they should be suppressed because McGinnis had not read France his

*Miranda* rights. The trial court found that when McGinnis first initiated contact with France, he was not in custody and that France's statements were part of McGinnis's preliminary investigation. Thus, the trial court found that France's statements were admissible.

■ The Fifth Amendment right to *Miranda* warnings attaches only when a custodial interrogation begins. *State v. Templeton*, 148 Wn.2d 193, 208, 59 P.3d 632 (2002). An investigative encounter with a suspect based on reasonable suspicion not amounting to probable cause does not require *Miranda* warnings. *State v. Huynh*, 49 Wn. App. 192, 201, 742 P.2d 160 (1987), *review denied*, 109 Wn.2d 1024 (1988).

■ ■ We review the trial court's determination of a custodial interrogation de novo. *State v. Solomon*, 114 Wn. App. 781, 788, 60 P.3d 1215 (2002), *review denied*, 149 Wn.2d 1025 (2003). We apply an objective standard as to whether a reasonable person in the same situation would perceive that he was free to leave. *State v. Cunningham*, 116 Wn. App. 219, 228, 65 P.3d 325 (2003); *State v. Ferguson*, 76 Wn. App. 560, 566, 886 P.2d 1164 (1995). The question is not whether a person actually believed he was free to leave, but whether " 'such a person would believe he was in police custody of the degree associated with formal arrest.' " *Ferguson*, 76 Wn. App. at 566 (quoting 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.6, at 105 (Supp. 1991)). In contrast, an investigative encounter is not "inherently coercive" and *Miranda* warnings are unnecessary. *Cunningham*, 116 Wn. App. at 228. An investigatory stop is brief and presumptively temporary, less "police dominated," and does not lead to deceptive interrogation tactics. *Cunningham*, 116 Wn. App. at 228 (citing *State v. Walton*, 67 Wn. App. 127, 130, 834 P.2d 624 (1992)).

■ Here, the dispatcher advised McGinnis that France was a "suspect" in a specified domestic violence incident. The dispatcher gave France's name, and McGinnis recognized France as someone he had just seen walking along the side of the road. McGinnis stopped France and told him that there was an alleged domestic dispute and that they

"needed to clear it up" before France would be free to leave.[2] 1 RP at 34. France then admitted being at Robinette's trailer (a violation of the order), where he argued with Robinette and then left. McGinnis then asked France whether he was allowed at the Robinette trailer (a question designed to elicit evidence of France's knowledge of the no-contact order) and France said that "he knew about the restraining order, [that] it was still in existence, and that [France] had been living there for the last year." 1 RP at 34-35. More importantly, however, no reasonable person in that same situation would have believed that he or she would have been allowed to leave because McGinnis had stated that he would not let France leave until the matter had been cleared up. In addition, McGinnis did not ask general or open-ended questions regarding France's presence on the roadside. Instead he asked questions designed to obtain an admission from France that he knew about the no-contact order, an element of the crime charged that is most clearly established by a defendant's admission. When McGinnis announced that he was formally arresting France and read him *Miranda* warnings, France invoked his rights.

The undisputed factual findings establish that France's pre-*Miranda* statements to McGinnis were the result of a custodial interrogation and are not admissible. Thus, France's confession of his knowledge of the continued existence of the no-contact order was improperly admitted.

■■ But admitting a confession elicited in violation of *Miranda* may be harmless error. *See State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (confessions without *Miranda* subject to harmless error test), *review denied*, 118 Wn.2d 1006 (1991). To find an error affecting a constitu-

---

[2] McGinnis testified as follows:

Q    What did you say specifically?

A    I told him that there was an alleged domestic dispute between him and Ms. Robinette and we needed to clear it up before I let him proceed or go on or go free or what.

1 RP at 34.

tional right harmless, we must find that the error was harmless beyond a reasonable doubt; we must look only at the untainted evidence and find it is overwhelming enough to necessarily lead to a guilty verdict. *State v. Cervantes*, 62 Wn. App. 695, 701, 814 P.2d 1232 (1991). Here, other than France's tainted confession of his knowledge of the no-contact order, the State presented no evidence that France knew of the no-contact order. France's statement was essential to the jury's finding violation of a no-contact order. We reverse that conviction. But this evidence does not affect France's fourth degree assault conviction. Robinette's testimony that France slapped her proves the elements of the charge. Thus, as to the fourth degree assault charge, the error in admitting France's statement that he knew about the no-contact order is harmless.

BELATED CrR 3.5 FINDINGS

France claims that the trial court's failure to enter CrR 3.5 findings until three weeks after he had filed his appellant's brief prejudiced him and precludes effective appellate review.

■■ CrR 3.5 requires the trial court to enter written findings of fact and conclusions of law with sections on undisputed facts, disputed facts, conclusions regarding disputed facts, and the conclusion and reasons regarding the admissibility of the defendant's statements. CrR 3.5(c); *State v. Miller*, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998), *review denied*, 137 Wn.2d 1023 (1999). The trial court's failure to comply is error, but such error is harmless if the court's oral findings are sufficient for appellate review. *Miller*, 92 Wn. App. at 703. If, as in this case, the trial court enters the findings of fact and conclusions of law after the appellant's brief is filed, we will reverse if the findings prejudice the defendant's appeal or the findings and conclusions appear tailored to meet the issues raised in the appellant's brief. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994).

Here, the trial court belatedly entered findings. But it found that there were no disputed facts and France does not

assert that there were disputed facts. Based on the undisputed facts, the trial court concluded that McGinnis made an investigatory stop of France. From these facts, the court concluded that France's statements[3] were noncustodial and admissible. But, because we reverse the trial court on this ground, we cannot say that the trial court's untimely entry of findings of fact and conclusions of law prejudiced France.

JURY INSTRUCTIONS

France also alleges that the jury instructions omitted "assault" as a necessary element of a felony violation of a no-contact order. Because this issue may arise on retrial, we address it briefly.

■ France claims that the to-convict jury instruction, no. 8, improperly omitted "assault," one element of the crime of felony violation of a no-contact order. RCW 26.50.110(4). Although the court's to-convict instruction did not require that the jury find beyond a reasonable doubt that France assaulted Robinette, the special verdict form did. The court must instruct the jury on all of the essential elements of a crime. *State v. Linehan*, 147 Wn.2d 638, 653, 56 P.3d 542 (2002), *cert. denied*, 538 U.S. 945 (2003). Failing to instruct on all essential elements relieves the State's burden of proving every element, thereby violating due process. *Linehan*, 147 Wn.2d at 654.

■ Under RCW 26.50.110, violating a no-contact order is a gross misdemeanor. RCW 26.50.110(1). The elements of the offense are in the statute as follows:

> Whenever an order is granted under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of

---

[3] The statements at issue were that France knew about the no-contact order and that he was living with the victim.

a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2) (a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section.

RCW 26.50.110(1).

Two conditions raise violation of a no-contact order from a gross misdemeanor to a class C felony. RCW 26.50.110(4), (5). These two conditions are (1) that the defendant has two prior convictions of violating a no-contact order or (2) that the violation constituted an assault less than the first or second degree. RCW 26.50.110(4), (5). Here, the court's instructions allowed the jury to find that France violated the no-contact order, a misdemeanor, without deciding whether he had two similar prior convictions or that he had violated the order by assaulting Robinette, the victim of the no-contact order. The trial court's instructions thus bifurcated the elements of the misdemeanor substantive offense from those elements that would enhance it to a felony and the court's bifurcated instructions guaranteed France a full and fair trial on all elements. In *State v. Oster*, 147 Wn.2d 141, 147-48, 52 P.3d 26 (2002), our Supreme Court opined that requiring a separate instruction on prior criminal history better protects the defendant's constitutional due process rights because the bifurcated instruction "guards against unfair prejudices and guarantees that the State meets its burden."[4] We agree with Division One that the Supreme Court's reasoning in *Oster* addressing the criminal history enhancement applies with equal clarity to the assault enhancement. In *State v. Davis*, 116 Wn. App. 81, 95, 64 P.3d 661, *review granted*, 149 Wn.2d 1032 (2003), that court approved bifurcation of the substantive elements instruction from the assault enhancement. Thus, the trial court properly instructed the jury on the elements of the crime of violating a no-contact order.

---

[4] France argues that *Oster* is limited to the prior conviction enhancement, but we find its premise equally applicable to circumstances such as these where a defendant might admit to having violated the order by living with or seeing the victim but deny having assaulted her.

Because we cannot say the erroneous admission of the defendant's pre-*Miranda*[5] confession was harmless, we reverse the violation of the no-contact order conviction and remand for a new trial. But we affirm France's assault conviction in all respects.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted and remanded to the Court of Appeals at 153 Wn.2d 1008 (2005).

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).