120 P.3d 654 (2005)
STATE of Washington, Respondent,
v.
Duff Richard FRANCE, Appellant.
No. 29239-4-II.
Court of Appeals of Washington, Division 2.
October 4, 2005.
*655 John Michael Sheeran, Attorney at Law, Pierce County Prosecutor S, Tacoma, WA, for Respondent.
Lise Ellner, Attorney at Law, Vashon, WA, for Appellant.
QUINN-BRINTNALL, C.J.
¶ 1 A jury convicted Duff Richard France of violating a no-contact order and fourth degree assault. In his initial appeal, France claimed that the trial court erred by admitting statements he made before receiving Miranda[1] warnings. We agreed that France's statements were the product of a custodial interrogation and should have been excluded. We found the error harmless as to his fourth degree assault conviction, but we reversed his conviction for violating a no-contact order and remanded for a new trial.
¶ 2 The State petitioned the Supreme Court for discretionary review and permission to supplement the record with Exhibit 1, a certified copy of the no-contact order signed by France. Our Supreme Court granted both motions and remanded the case back to us with direction that we reconsider in light of State v. Hilliard, 89 Wash.2d 430, 573 P.2d 22 (1977), and State v. Heritage, 152 Wash.2d 210, 214, 95 P.3d 345 (2004).
¶ 3 In our original opinion, we held that police violated France's Fifth Amendment rights when they questioned him without giving him Miranda warnings after having told him that he was not free to leave.
Here, the dispatcher advised [Pierce County Deputy Sheriff Michael F.] McGinnis that France was a "suspect" in a specified domestic violence incident. The dispatcher gave France's name, and McGinnis recognized France as someone he had just seen walking along the side of the road. McGinnis stopped France and told him that there was an alleged domestic dispute and that they "needed to clear it up" before France would be free to leave.[[2]] 1 RP at 34. France then admitted being at Robinette's trailer (a violation of the order), where he argued with Robinette and then left. McGinnis then asked France whether he was allowed at the Robinette trailer (a question designed to elicit evidence of France's knowledge of the no-contact order) and France said that "he knew about the restraining order, [that] it was still in existence, and that [France] had been living there for the last year." 1 RP at 34-35. More importantly, however, no reasonable person in that same situation would have believed that he or she would have been allowed to leave because McGinnis had stated that he would not let France leave until the matter had been cleared up. In addition, McGinnis did not ask general or open-ended questions regarding *656 France's presence on the roadside. Instead he asked questions designed to obtain an admission from France that he knew about the no-contact order, an element of the crime charged that is most clearly established by a defendant's admission. When McGinnis announced that he was formally arresting France and read him Miranda warnings, France invoked his rights.
State v. France, 121 Wash.App. 394, 399-400, 88 P.3d 1003 (2004).
¶ 4 In Hilliard, officers told an otherwise unknown assault suspect that they would discretely check his explanation that he had not assaulted anyone but was in the area to visit a married woman. Police told him that if his story checked out, he would be allowed to leave. When Hilliard refused to supply further information identifying the married woman, police arrested him on suspicion of the assault and advised him of his Miranda warnings. At trial, Hilliard unsuccessfully sought to suppress his pre-Miranda statements to the police and the Supreme Court affirmed.
¶ 5 Here, police knew France, knew there was a court order prohibiting France from having contact with Robinette, and knew that Robinette had reported being assaulted by him a short while before. Unlike Hilliard, where the identity of the assailant of the 17-year-old victim was unknown to police, police knew France and the history of domestic violence with Robinette. More importantly, police told France that he would not be allowed to go until the matter was cleared up. The duration of the detention was unlimited. Unlike Hilliard, police did not limit the detention to verify specific information France voluntarily provided. Thus, Hilliard does not control our decision here.
¶ 6 In Heritage, our Supreme Court reiterated the test for determining whether police contact was a custodial interrogation stating "whether a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest." 152 Wash.2d at 218, 95 P.3d 345. Analogizing to routine traffic stops, the Heritage court stated that because both traffic stops and routine Terry[3] stops are brief and they occur in public, they are "substantially less `police dominated' than the police interrogations contemplated by Miranda." Heritage, 152 Wash.2d at 218, 95 P.3d 345. But the duration of the police stop of France here was uncertain. France was not told that he would be free to leave as soon as police verified certain information or completed a traffic citation form. France's freedom was curtailed indefinitely "until [McGinnis decided] the matter was cleared up." France, 121 Wash.App. at 400, 88 P.3d 1003. After being expressly told that he would not be allowed to leave, France was then asked if he had been to the assault victim's home and then whether he knew there was a no-contact order in effect and that for him to be at Robinette's home was a violation of that order.
¶ 7 Having considered the two cases brought to our attention by our Supreme Court, we again hold that the questioning of France without Miranda warnings was improper. It occurred after police told him that he could not leave until the matter was cleared up, its duration was open-ended and because police had probable cause to arrest France, neither France nor any reasonable person in his position would have felt that he was free to leave until he satisfactorily explained the assault and his unlawful presence at Robinette's home. France's was the type of situation where police had probable cause to make an arrest but delayed doing so to avoid a Miranda warning. See State v. Creach, 77 Wash.2d 194, 198, 461 P.2d 329 (1969), distinguished by Hilliard, 89 Wash.2d 430, 573 P.2d 22.

HARMLESS ERROR
¶ 8 In our initial opinion, we held that the error in admitting France's non-Miranda statements was harmless as regards his conviction of fourth degree assault but not as to the charge of violating a no-contact order. The Supreme Court granted the State's motion to supplement the record on appeal to include a certified copy of the no-contact order France signed that was admitted as *657 Exhibit 1 at trial. In our initial opinion, we stated, "Here, other than France's tainted confession of his knowledge of the no-contact order, the State presented no evidence that France knew of the no-contact order. France's statement was essential to the jury's finding violation of a no-contact order." France, 121 Wash.App. at 401, 88 P.3d 1003. As regards the trial, this statement was incorrect. We should have qualified it by stating that based on the record presented to us on appeal, "other than France's tainted confession of his knowledge of the no-contact order, the State presented no evidence France knew of the order." As supplemented, the record now before us contains a certified copy of the no-contact order with France's signature on it. Thus, on the record as it now stands, admission of France's non-Miranda warning statements to McGinnis was harmless.
¶ 9 On reconsideration we affirm both the violation of the no-contact order and fourth degree assault convictions.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] McGinnis testified as follows:

Q What did you say specifically?
A I told him that there was an alleged domestic dispute between him and Ms. [Ellen] Robinette and we needed to clear it up before I let him proceed or go on or go free or what.
1 Report of Proceedings at 34.
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).