# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49481-7-II |
| Respondent, | |
| v. | |
| RICHARD WAYNE BLAIR, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Richard Wayne Blair appeals his conviction for first degree murder of

James Payne.  Blair argues that the trial court erred by denying his CrR 3.5 motion to suppress

the inculpatory statement he made to police and that insufficient evidence supports his first

degree murder conviction.  In his statement of additional grounds for review (SAG), Blair

contends that the prosecutor engaged in purposeful jury discrimination and that the trial court

erred by allowing the prosecutor to change his peremptory challenges list.  Finding no error or

misconduct, we affirm Blair's conviction.

## FACTS

In January 2015, Payne rented a room in a detached garage on Robert and Daniel Berg's

property.  Blair occasionally shared the room with Payne.  The morning of January 31, Blair

entered the main home on the Bergs' property and awoke Robert.[1]  Blair then told Robert that he

had killed Payne.  Robert took Blair to a nearby transient camp while Daniel called the police.

---

[1] We refer to the Bergs by their first names to avoid confusion and intend no disrespect.

When the police arrived at the Bergs' property, they discovered Payne's body in the rented room. There was a hammer and screwdriver next to Payne and blood spatter on the wall. Police identified a number of injuries on Payne, including multiple injuries to his head and back and severe lacerations on one of his wrists.

Soon after, police arrived at the transient camp and located Blair. Deputy Jeff Reigle placed Blair under arrest and walked Blair toward his patrol vehicle. While Deputy Reigle walked Blair to his patrol vehicle, he noticed that Blair was limping. Deputy Reigle asked if Blair was injured, and Blair answered in the negative, stating that he had been sleeping all day. Blair had not been read his *Miranda*[2] warnings at this point.

Later, the police provided Blair with his *Miranda* warnings and interviewed him. During the interview, Blair stated that while he was sleeping, Payne hit him in the head with a hammer. Blair awoke and a struggle ensued. Blair stated that he stabbed Payne in the neck, cut Payne several times, and hit Payne with a hammer. Blair stated that he held Payne in a choke hold and said, "[B]ro man, don't make me f****** kill you dog." Ex. 273A at 34. Blair also stated that the fight lasted for approximately 45 minutes before he strangled Payne to death.

The State subsequently charged Blair with one count of first degree murder.[3] Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of Blair's statement to Deputy Reigle. The trial court, in its oral ruling, determined that Blair's statement was

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] RCW 9A.32.030(1)(a).

admissible, reasoning that Deputy Reigle's question regarding whether Blair was injured was not a custodial interrogation because the purpose of Deputy Reigle's question was to determine whether Blair required medical attention.

At trial, witnesses testified that Payne received injuries to his head, neck, and arms. One of the witnesses who testified was Dr. John Lacy, an associate medical examiner. Dr. Lacy concluded that multiple blunt and sharp force injuries, strangulation, and the loss of blood caused Payne's death. Dr. Lacy testified that Payne had a skull fracture as well as a number of bruises on his face, the back of his head, and his back that were caused by a blunt object consistent with a hammer. A number of lacerations on Payne's face and neck were caused by a sharp object. Some of the lacerations were so deep that they exposed bone, and Dr. Lacy discovered glass in a number of the injuries. Additionally, there were a number of deep lacerations on Payne's arms that were caused by a sharp object.

Dr. Lacy determined that Payne likely received the injuries to his head and neck and that these injuries substantially contributed to his death. Dr. Lacy also testified that Payne did not exhibit defensive wounds and that he would have been unable to defend himself after receiving the blows to his head. Dr. Lacy noted that the injuries to Payne's arms occurred after the injuries to his head.

The jury found Blair guilty as charged. Blair appeals. While this appeal was pending, the trial court submitted its written findings and conclusions for the CrR 3.5 hearing that were consistent with its oral ruling.

ANALYSIS

I. PRE-*MIRANDA* STATEMENT

Blair argues that the trial court erred by denying his CrR 3.5 motion to suppress the inculpatory statement he made to Deputy Reigle. We disagree.

A.    *Late Entry of Findings and Conclusions*

As an initial matter, Blair states that the trial court failed to enter findings of fact and conclusions of law regarding Blair's pre-*Miranda* statement to police. Blair does not assign error on these grounds and instead contends that the facts were undisputed and that the record of the CrR 3.5 hearing is sufficient for this court's review. The State notes that the trial court entered its findings and conclusions after Blair filed his opening brief. Because there is no prejudice to Blair, we review the trial court's late entry of findings and conclusions in determining the admissibility of Blair's statement to Deputy Reigle.

CrR 3.5(c) requires the trial court to enter written findings of fact and conclusions of law after a CrR 3.5 hearing. *State v. France*, 121 Wn. App. 394, 401, 88 P.3d 1003 (2004). Late findings and conclusions may be submitted and entered while an appeal is pending "if the defendant is not prejudiced by the belated entry of findings." *State v. Cannon*, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). We do not infer prejudice from delay alone. *State v. Head*, 136 Wn.2d 619, 625, 964 P.2d 1187 (1998).

Here, the trial court entered its findings and conclusions after Blair filed his opening brief. The trial court's findings and conclusions are consistent with its oral ruling following the CrR 3.5 hearing. *See Cannon*, 130 Wn.2d at 329-30 (finding no prejudice when late-filed

4

findings and conclusions were consistent with the trial court's oral ruling). In addition, Blair has not alleged or demonstrated that the written findings and conclusions are inadequate to permit appellate review or that the delayed entry is in any way prejudicial. As a result, we find no error in the trial court's late entry of findings and conclusions, and we review those findings and conclusions to determine the admissibility of Blair's statement to Deputy Reigle.

B.      *Custodial Interrogation*

Blair argues that the trial court erred by denying his CrR 3.5 motion to suppress the inculpatory statement he made to Deputy Reigle because his statement was elicited during a pre-*Miranda* custodial interrogation. We disagree.

We review a trial court's ruling after a CrR 3.5 suppression hearing to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). We review the trial court's conclusions of law de novo. 180 Wn.2d at 867.

"*Miranda* warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). When these conditions are present but *Miranda* warnings are not given, we presume that the suspect's self-incriminating statements are involuntary and cannot be admitted at trial. *State v. Rhoden*, 189 Wn. App. 193, 199, 356 P.3d 242 (2015). Here, it is clear that Blair was in custody and that he made his statement to an agent of the State. Thus, the matter to be resolved is whether Blair was subject to an "interrogation."

Not all statements made while in custody are products of an interrogation. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 685, 327 P.3d 660 (2014). To determine whether an officer's question was interrogation, we apply an objective test to determine whether the officer should have known that the question was reasonably likely to elicit an incriminating response. *State v. Shuffelen*, 150 Wn. App. 244, 257, 208 P.3d 1167 (2009).

Here, as Deputy Reigle walked Blair to his patrol vehicle, he noticed that Blair was walking with a limp. Deputy Reigle asked Blair if he was injured, and Blair stated that he recently woke up and that he had been sleeping all day. The trial court concluded that no custodial interrogation occurred because the purpose behind Deputy Reigle's question was to determine whether Blair needed medical attention. As a result, the trial court concluded that Blair's statement that he had been sleeping all day was admissible.

Blair argues that Deputy Reigle's question amounts to an interrogation because Deputy Reigle should have known that his question was reasonably likely to elicit an incriminating response, given that Blair was likely injured because there was evidence of a considerable struggle when police discovered Payne's body. Blair's argument is unpersuasive.

While escorting Blair to his patrol vehicle, Deputy Reigle noticed Blair was limping and asked if he was injured. Deputy Reigle's question was not intended to elicit information for investigatory purposes. Deputy Reigle did not ask what caused Blair to limp or if he had been in an altercation. Using an objective test, it is clear that Deputy Reigle asked Blair if he was injured to determine whether Blair needed medical care before being transported to the police station. Accordingly, it cannot be said that Deputy Reigle should have known that his question was

reasonably likely to elicit an incrimination response. As a result, Deputy Reigle's question was not interrogation. Therefore, the trial court's findings support its conclusion that Blair's statement to Deputy Reigle was admissible at trial.

## II. SUFFICIENCY OF THE EVIDENCE

Blair next argues that insufficient evidence supports his conviction for first degree murder because the State failed to prove beyond a reasonable doubt that Blair's murder was premeditated. We disagree.

A challenge to the sufficiency of the evidence to convict is a constitutional question that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine whether sufficient evidence supports a defendant's conviction, we must, after viewing the evidence in a light most favorable to the State, consider whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. 184 Wn.2d at 903. We draw all reasonable inferences from the evidence in favor of the State and interpret them strongly against the defendant. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). We consider circumstantial evidence and direct evidence as equally reliable. *State v. Bowen*, 157 Wn. App. 821, 827, 239 P.3d 1114 (2010).

A person is guilty of first degree murder when "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person." RCW 9A.32.030(1)(a). "Premeditation" is "'the deliberate formation of and reflection upon the intent to take a human life' and involves 'thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Allen*, 159 Wn.2d 1, 7-8, 147 P.3d 581 (2006) (internal

quotation marks omitted) (quoting *State v. Finch*, 137 Wn.2d 792, 831, 975 P.2d 967 (1999)).

Premeditation can be established by a number of factors, including the infliction of multiple

injuries, inflicting injuries by various means over a period of time, and attacking a victim from

behind. 159 Wn.2d at 8.

Here, it is uncontested that the injuries Blair inflicted upon Payne caused his death.

When police discovered Payne's body, they found a hammer and screwdriver next to him. Blair

admitted that he was involved in an altercation with Payne and that he stabbed Payne in the neck

and hit him with a hammer. Blair also stated that the altercation lasted for approximately 45

minutes and that he held Payne in a choke hold and said, "[D]on't make me . . . kill you." Ex.

273A at 34.

Evidence at trial showed that Payne likely received the injuries to his head and neck. Dr.

Lacy testified that Payne did not exhibit defensive wounds and that he would have been unable

to defend himself after receiving the blows to his head. Dr. Lacy also testified that the deep

lacerations on both of Payne's arms were inflicted close to or after Payne's death.

Viewing the evidence in a light most favorable to the State, we conclude that a rational

trier of fact could find that Blair's murder was premeditated beyond a reasonable doubt. Blair

inflicted a number of injuries on Payne by various means—bruises to Payne's face, head, and

back that were consistent with a hammer; lacerations on Payne's face, neck, and arms that

contained glass and were made with a sharp object; and evidence of strangulation. The evidence

shows that Blair continued to assault Payne after he was unable to defend himself. In addition,

the altercation occurred over at least 45 minutes and provided Blair with a period of time to

deliberate and reflect. Moreover, Blair's statement to Payne shows that he did, in fact, have the opportunity to deliberate and that he decided to kill Payne after that deliberation. Taken together, these facts demonstrate that Blair deliberately formed and reflected upon his intent to kill Payne. Thus, the State presented sufficient evidence to support Blair's conviction for first degree murder.

## STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Blair contends that the prosecutor engaged in purposeful jury discrimination by exercising a peremptory challenge to strike a potential juror with prior convictions and that the trial court erred by allowing the prosecutor to change his peremptory challenges list. We conclude that Blair's claims lack merit.

### I. JURY DISCRIMINATION

First, Blair contends that the prosecutor engaged in purposeful jury discrimination by exercising a peremptory challenge to strike a potential juror who had prior convictions. Specifically, Blair asserts that *Batson*[4] should extend to potential jurors with prior convictions. Blair's claim lacks merit.

In *Batson v. Kentucky*, the Supreme Court held that the equal protection clause prohibits a prosecutor from exercising a peremptory challenge to purposefully discriminate against a potential juror because of race. 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986). This equal protection guaranty has been extended to forbid a prosecutor from challenging

---

[4] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

potential jurors solely on account of their gender or ethnicity. *See State v. Evans*, 100 Wn. App. 757, 763, 998 P.2d 373 (2000).

To determine whether an equal protection violation occurred during jury selection, we must determine whether the defendant has established a prima facie case of purposeful discrimination. 100 Wn. App. at 763-64. To show a prima facie case of purposeful discrimination, the defendant must first show that the peremptory challenge was exercised against a member of a constitutionally cognizable group. *State v. Rhodes*, 82 Wn. App. 192, 196, 917 P.2d 149 (1996). Then, the defendant must show that this fact, and any other relevant circumstances, raise an inference that the prosecutor's challenge of a potential juror was based on the potential juror's group membership. *Evans*, 100 Wn. App. at 764.

During voir dire, juror 38 stated that he had been convicted of possession of a controlled substance with the intent to deliver. Later, the prosecutor exercised a peremptory challenge against juror 38.

Blair fails to meet his burden in establishing a prima facie case of purposeful jury discrimination. Blair does not show that those with prior convictions are members of a constitutionally cognizable group and does not show that the prosecutor's peremptory challenge of juror 38 was based on the potential juror's membership in a constitutionally cognizable group. As a result, Blair fails to make a prima facie showing of purposeful discrimination. Thus, Blair's claim fails.

II. PEREMPTORY CHALLENGES

Blair also contends that the trial court erred by allowing the prosecutor to change his peremptory challenges list. Blair's claim lacks merit.

"The trial court has broad discretion over the jury selection process." *State v. Williamson*, 100 Wn. App. 248, 255, 996 P.2d 1097 (2000). The procedure for exercising peremptory challenges in a criminal trial is governed both by statute and court rule. *Portch v. Sommerville*, 113 Wn. App. 807, 810, 55 P.3d 661 (2002); *see* RCW 4.44.210. Under CrR 6.4(e)(2), "peremptory challenges shall be exercised alternately first by the prosecution then by each defendant until the peremptory challenges are exhausted or the jury accepted."

During jury selection, Blair and the prosecutor recorded their peremptory challenges by exchanging a list and alternately writing the names of the potential jurors they sought to challenge. After the prosecutor wrote six potential jurors' names, Blair chose to exercise only five peremptory challenges. Then, the prosecutor changed his peremptory challenge list by crossing out the name of a potential juror he had written and replacing it with the name of a different potential juror. Blair objected. The trial court allowed the altered peremptory challenge list, reasoning that the list was not final at the time the prosecutor altered it because the list had not been submitted to the court. Blair was also given the opportunity to change his peremptory challenge list.

Blair fails to show that the trial court violated the procedure for exercising peremptory challenges. The prosecutor and Blair alternately wrote the names of the potential jurors they wished to challenge until the jury was accepted. The prosecutor's action in replacing one

11

No. 49481-7-II

potential juror on the challenge list with a different potential juror did not violate this procedure. Moreover, Blair also had the opportunity to change his peremptory challenge list. As a result, the trial court exercised its broad discretion in accepting the prosecutor's altered peremptory challenge list. Accordingly, Blair's claim lacks merit.

We affirm Blair's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.

12