1997-NMCA-101

946 P.2d 1095

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael Lee CRAIN, Defendant–
Appellant.**

No. 16463.

Court of Appeals of New Mexico.

Aug. 13, 1997.

Certiorari Denied Sept. 30, 1997.

Tom Udall, Attorney General, Joan M. Waters, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

*OPINION*

ARMIJO, Judge.

1. Defendant appeals from his convictions for kidnapping and two alternative counts of criminal sexual penetration in the second degree (CSP II). The grounds for Defendant's appeal are that: (1) the trial court erred in its jury instructions for the crime of CSP II; (2) Defendant was subjected to double jeopardy when he was sentenced to multiple punishments for the same offense; and (3) the cumulative errors of Defendant's trial counsel deprived Defendant of his right to effective assistance of counsel. "Issues raised in the docketing statement but not briefed are deemed abandoned." *State v. Ramos*, 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.1993) (citation omitted). Because we are not persuaded that the legislature intended multiple punishments for the same offense or that the legislature intended to punish every CSP that resulted from force and restraint as a second-degree felony, we remand this case to the trial court with instructions to vacate Defendant's conviction and sentence for kidnapping and CSP II in the commission of a kidnapping. We affirm Defendant's remaining conviction and sentence for CSP II resulting in personal injury.

## I. BACKGROUND

2. Defendant's convictions arose from an evening of drinking and dancing at a country-western bar in Albuquerque, New Mexico, on August 21 and 22, 1993. The victim was a prior acquaintance of Defendant who spent time with him at the nightclub that evening and followed him to his car near closing time to go to breakfast. The victim entered Defendant's car and the two talked, smoked, and kissed initially. Defendant and the victim then engaged in sexual intercourse in Defendant's car.

3. According to the victim's testimony, she resisted from the beginning and did not consent to have sexual intercourse at any time. The victim testified that she kicked and fought and tried to escape, but Defendant prevented her from opening the car door. She explained that she yelled "Daddy, Daddy, please stop" during the attack be-

cause "what [Defendant] was doing to me reminded me of how my father was with me as a child." The victim further testified that she had been sexually abused as a child by her father.

4. According to Defendant's testimony, his sexual intercourse with the victim was consensual and ended when he promptly and voluntarily withdrew from the victim as she stated "Daddy, Daddy," and began to yell at him. Defendant interpreted the victim's statement to mean that "maybe she was fantasizing something."

5. After the incident, the victim was taken to a hospital where the treating physician observed bruises and scratches on her body. The victim's arm was in a sling and she was upset. No test results were presented at trial because the parties stipulated that Defendant had sexual intercourse with the victim.

6. On January 21, 1994, Defendant was indicted on alternative counts of CSP II in violation of NMSA 1978, § 30–9–11(D) (Repl. Pamp.1994), kidnapping (no great bodily harm) in violation of NMSA 1978, § 30–4–1 (Repl.Pamp.1994), and aggravated battery in violation of NMSA 1978, § 30–3–5 (Repl. Pamp.1994). A jury trial commenced on September 13, 1994. At the close of evidence, the trial court dismissed the aggravated battery charge.

7. The jury was given essential-elements instructions patterned on the uniform jury instructions (UJIs) for CSP II (personal injury), UJI 14–949 NMRA 1997, CSP II (commission of a felony), UJI 14–954 NMRA 1997, and kidnapping (no great bodily harm), UJI 14–403 NMRA 1997. The jury also was given definitional instructions for the terms "sexual intercourse" and "hold for service." These definitional instructions were patterned on UJI 14–982 NMRA 1997 and SCRA 1986, 14–405 (withdrawn 1993). The trial court refused the following instruction tendered by Defendant:

Should you find that [the victim] did consent to have sexual intercourse with [D]efendant, and that her later admonition for [D]efendant to cease such intercourse was under her misapprehension that [D]efen-

dant was her father, then you must return your verdict of not guilty as to all counts.

8. During deliberations, the jury sent the following question to the trial court: "[I]f the women [sic] says no after the sex act begins, does continuing constitute rape[?]" In chambers with counsel present, the trial court stated: "The way I propose to answer the question is that, 'I'm sorry. I cannot answer that question. You'll have to rely on the instructions and the evidence.'" Neither Defendant nor the State objected to the Court's proposed answer.

9. On September 19, 1994, the jury returned a verdict of guilty on both alternative counts of CSP II and the kidnapping charge. On April 3, 1995, the trial court sentenced Defendant to nine years on each of the three charges, ordered that all three sentences would run concurrently, and suspended eight years and six months of the nine-year sentences. This appeal followed.

## II. DISCUSSION

### A. *Instructional Error*

10. Defendant claims it was reversible error to refuse the instruction tendered by his trial counsel regarding the purported effect of the victim's misapprehension that Defendant was her father. Defendant also claims that the trial court's refusal to provide an instruction on the victim's withdrawal of consent during intercourse in response to a question from the jury amounts to a more fundamental error of failing to instruct on essential elements of the offense. On appeal, Defendant argues that the trial court failed to define the terms "sexual intercourse" or "penetration" in a manner that would exclude from the crime of CSP II those acts of sexual intercourse or penetration that begin with the victim's consent.

■ 11. We conclude that the trial court's decision not to provide an additional definitional instruction regarding these terms in response to the jury's question did not amount to fundamental error because a failure to give a definitional instruction is not a failure to instruct on an essential element. *See Ramos,* 115 N.M. at 725, 858 P.2d at 101. The jury was given the UJI defining "sexual

intercourse," UJI 14–982, and we conclude that the instructions given adequately covered the law. *See State v. Stettheimer,* 94 N.M. 149, 154, 607 P.2d 1167, 1172 (Ct.App. 1980).

■ 12. The trial court's instructions to the jury also did not deprive Defendant of his right to present his theory of the case. Defendant's theory at trial was that the entire act of sexual intercourse was consensual because Defendant promptly and voluntarily withdrew from the victim when she began to say "Daddy, Daddy." The essential-elements instructions given to the jury adequately covered the concept of lack of consent, and Defendant's trial counsel reinforced this concept in his closing argument by asserting that the State had the burden of proving that the intercourse was not consensual.

13. We construe Defendant's tendered instruction regarding the victim's misapprehension that Defendant was her father as raising a separate issue of mistaken identity or a challenge to the victim's credibility. This instruction was not sufficient to alert the mind of the trial court to an issue of withdrawal of consent or the victim's change of mind during intercourse. The issue of withdrawal of consent during intercourse did not arise until the jury submitted a question to the trial court during deliberations. The lack of an objection by Defendant's trial counsel to the trial court's decision not to instruct the jury on withdrawal of consent at this point is consistent with Defendant's theory that the entire act of sexual intercourse was consensual.

■ 14. For these reasons, we also conclude that Defendant's tendered instruction on the victim's misapprehension that Defendant was her father was not sufficient to preserve Defendant's claim on appeal that it was reversible error for the trial court not to instruct the jury on withdrawal of the victim's consent after sexual intercourse had begun. *See* Rule 5–608(D) NMRA 1997 ("[O]bjection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury

is instructed."). We affirm the trial court's decision regarding the use of jury instructions for CSP II in this case.

## B. *Double Jeopardy.*

■ 15. Defendant alleges that his constitutional right to be free from double jeopardy was violated because he was convicted and given distinct sentences for CSP II (personal injury) under Section 30–9–11(D)(2), CSP II (commission of a felony) under Section 30–9–11(D)(4), and kidnapping (no great bodily harm) under Section 30–4–1. We review Defendant's double jeopardy claims on appeal despite Defendant's failure to raise these claims before the trial court or in his docketing statement because double jeopardy claims are not waivable. *See* NMSA 1978, § 30–1–10 (Repl.Pamp.1994); *State v. Sanchez,* 122 N.M. 280, 283, 923 P.2d 1165, 1168 (Ct.App.), *cert. denied,* 122 N.M. 279, 923 P.2d 1164 (1996).

■ 16. Defendant's double jeopardy claims are limited to the issue of multiple punishments for the same offense. On this issue, " 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (quoting *Grady v. Corbin,* 495 U.S. 508, 516–17, 110 S.Ct. 2084, 2090–91, 109 L.Ed.2d 548 (1990), *overruled by U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).

■ 17. All of Defendant's convictions stem from the same act of sexual intercourse and involve the use of force or physical violence as a common element. The jury instructions for CSP II (personal injury) involve "use of physical force or physical violence" which "resulted in scrapes or bruises or an injured hand or arm or shoulder, or neck to" the victim. The jury instructions for CSP II (commission of a felony) involve sexual intercourse "during commission of Kidnapping (No Great Bodily Harm)." The elements of jury instruction for the underlying felony of kidnapping are restraint or confinement of the victim by force or deception and Defendant's intent to hold the victim for service against her will. Because

both forms of CSP II and the kidnapping charge involve the use of force during the same act of sexual intercourse, we conclude that the conduct underlying all of Defendant's convictions is unitary. The same conduct violates all three statutory provisions. *See Swafford,* 112 N.M. at 13, 810 P.2d at 1233.

18. We next look for evidence that the legislature intended to provide for multiple punishments for CSP II (personal injury), CSP II (commission of a felony), and kidnapping relating to the same conduct. *Id.* Such evidence may be found in an express provision of the statute, or a presumption in favor of multiple punishment may be established if each crime requires proof of a fact that the other does not. *Id.* at 14, 810 P.2d at 1234. In this case we find no express provision calling for multiple punishments. However, we conclude that the elements of CSP II (commission of a felony) and kidnapping require proof of a fact that CSP II (personal injury) does not.

19. While all of the crimes at issue in this case may share the use of force as a common element, CSP II (commission of a felony) and kidnapping require proof of a result or purpose that is distinct from the one required for CSP II (personal injury). CSP II (personal injury) requires proof of an injury resulting from the use of force during the commission of the offense. *See* § 30–9–11(D)(2); UJI 14–949 NMRA 1997. CSP II (commission of a felony) involving the underlying felony of kidnapping requires proof that force or deception was used for the purpose of restraining or confining the victim and with the intent of holding the victim for service. *See* §§ 30–9–11(D)(4), 30–4–1; UJI 14–954, 14–403 NMRA 1997. Because CSP II (personal injury) involves proof of facts that CSP II (commission of a felony) and kidnapping do not require, we conclude that there is a presumption that the CSP statutes punish different offenses. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234.

20. However, this presumption is not conclusive and may be overcome by other indicia of legislative intent. *Id.* "Since legislatures often produce little evidence of their intent regarding multiple punishment, the rule of lenity is often an appropriate tool of statutory construction in such contexts." *State v. Landgraf,* 121 N.M. 445, 454, 913 P.2d 252, 261 (Ct.App.), *cert. denied,* 121 N.M. 375, 911 P.2d 883 (1996). Applying this rule, we have held in prior cases that the enumeration of different aggravating factors, or alternative methods of committing an offense, did not evince a legislative intent to authorize multiple punishments for the same act. *See id.* (barring multiple punishments for same offense under homicide by vehicle statute); *State v. Orgain,* 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct.App.1993) (legislature intended only one conviction for each forgery related to the same facts involving the same check); *State v. Williams,* 105 N.M. 214, 217, 730 P.2d 1196, 1199 (Ct.App. 1986) (barring multiple punishments for same offense under criminal sexual contact statute); *cf.* UJI 14–905 NMRA 1997 committee commentary (Although statutes on sexual offenses set forth alternative methods for committing the offenses, "[i]n all cases where alternate methods of committing one offense are submitted to the jury, the defendant is being charged with only one offense and may be found guilty of only one offense."). Based on these authorities, we conclude that the legislature has not manifested a clear intent that Defendant's single act of sexual intercourse with the victim could provide the basis for convicting him of both CSP II (personal injury) and CSP II (commission of a felony). Therefore, Defendant's conviction and sentence for one of these CSP II offenses must be set aside. The question of which CSP conviction must be set aside is answered by consideration of Defendant's next issue.

21. Defendant also argues that there was insufficient evidence to support convictions for CSP II (commission of a felony) and kidnapping (no great bodily harm). Defendant relies on *State v. Pisio,* 119 N.M. 252, 259, 261–62, 889 P.2d 860, 867, 869–70 (Ct. App.1994), and *State v. Corneau,* 109 N.M. 81, 87, 781 P.2d 1159, 1165 (Ct.App.1989). There, we held that the legislature did not intend to turn every CSP III into CSP II just because force or restraint was involved. Rather, in order to raise the offense to CSP

II, there had to be force or restraint beyond that necessarily involved in every sexual penetration without consent. We agree with Defendant and hold here that, just as CSP III cannot be charged as CSP II without some force or restraint occurring either before or after the sexual penetration without consent, so too kidnapping cannot be charged out of every CSP III without some force, restraint, or deception occurring either before or after the sexual penetration.

22. The State argues that there are such facts in this case in that the kidnapping involved acts of deception by Defendant that occurred much earlier than the sexual intercourse. However, this argument is inconsistent with the State's theory at trial that the kidnapping was accomplished by force. Also, the jury's verdict does not indicate whether it found the kidnapping was accomplished by force or by deception, and therefore we do not know on which of these alternatives Defendant's kidnapping conviction was based. Under these circumstances, we will presume that the conduct underlying Defendant's convictions for kidnapping and CSP II (commission of a felony) was based on a theory that potentially violated Defendant's double jeopardy rights. *See State v. Rodriguez*, 113 N.M. 767, 772, 833 P.2d 244, 249 (Ct.App. 1992) (when crime is presented to jury in alternative and appellate court cannot tell if jury found constitutional or unconstitutional alternative, conviction must be set aside). Accordingly, Defendant's conviction for CSP II (commission of a felony), as well as his conviction for kidnapping, must be set aside.

### C. *Ineffective Assistance of Counsel.*

23. On appeal, Defendant alleges that his trial counsel committed several errors which had the cumulative effect of depriving Defendant of effective assistance of counsel, namely: (1) introduction of Defendant's character into evidence through the use of a character witness; (2) calling two witnesses who gave contradictory testimony regarding the operation of the door locks on Defendant's car; (3) failure to raise the issue of withdrawal of consent or object to the trial court's proposed answer to the jury's question regarding this issue; (4) failure to object to the trial court's

refusal of a jury instruction tendered by Defendant regarding the victim's misapprehension that Defendant was her father; (5) failure to object to testimony by the victim's treating physician according to which the victim said the man who raped her was named Michael; (6) failure to object to the form of the prosecutor's questions (leading questions) during cross-examination of Defendant's character witness; (7) failure to move for a new trial after the trial court expressed some doubt about Defendant's guilt at the sentencing hearing; (8) failure to call an expert witness on the effects of childhood sexual abuse on the victim; (9) failure of trial counsel to adequately listen to the proceedings due to a hearing problem; and (10) failure to move for a directed verdict on the charges of kidnapping and CSP II (commission of a felony).

24. We address these claims of ineffective assistance of counsel under the two-part test derived from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Defendant argues in his brief that we should interpret the guarantee of effective assistance of counsel in the New Mexico Constitution differently than its federal counterpart. However, we choose to follow our prior decisions adopting and applying the *Strickland* test, particularly when the New Mexico Supreme Court has recently used that test. *See State v. Lopez,* 122 N.M. 63, 70, 920 P.2d 1017, 1024 (1996) (utilizing the *Strickland* Test); *State v. Wilson,* 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (1994) (stating that it is desirable to make the law certain and holding that Court of Appeals is bound by Supreme Court precedent). To prevail under the *Strickland* test, Defendant "must prove that defense counsel did not exercise the skill of a reasonably competent attorney and that this incompetent representation prejudiced the defendant's case, rendering the trial court's results unreliable." *Lopez,* 122 N.M. at 70, 920 P.2d at 1024.

25. Regarding claims (1), (2), and (3), we regard trial counsel's choice and presentation of defenses and defense witnesses as falling within the ambit of trial tactics and strategy. *See State v. Martinez,* 122 N.M.

476, 484, 927 P.2d 31, 39 (Ct.App.) (citation omitted), *cert. denied,* 122 N.M. 416, 925 P.2d 882, *and cert. denied* 122 N.M. 578, 929 P.2d 269 (1996). "Trial counsel's strategic choice made as a result of investigation as to what defense to pursue is 'virtually unchallengeable.'" *State v. Baca,* 115 N.M. 536, 543, 854 P.2d 363, 370 (Ct.App.1993) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). Hence, we do not find that Defendant's trial counsel was ineffective in his choice and presentation of defense witnesses as alleged in claims (1) and (2).

26. We elaborate further on claim (3). On appeal, Defendant argues that his trial counsel was ineffective in failing to advance a withdrawal-of-consent theory either at trial or during jury deliberations when presented with a question from the jury. At trial, however, Defendant advanced the theory that the entire act of sexual intercourse was consensual and attacked the victim's credibility by arguing that she mistakenly accused Defendant of raping her because she was upset by prior sexual abuse involving her father. From the record before us, it appears that Defendant's trial counsel made the strategic or tactical decision to rely entirely on the theory of consent and mistaken identity instead of presenting an alternative theory of withdrawal of consent after penetration has begun. We cannot say that Defendant's trial counsel failed to exercise the skill of a reasonably competent attorney in making this decision.

27. Although we do not rule on the merits of the issue of withdrawal of consent under New Mexico law, we note that other jurisdictions have questioned the legal validity of the proposition that there can be no rape or CSP crime if the victim's consent is withdrawn after penetration has begun. *State v. Crims,* 540 N.W.2d 860, 865 (Minn.Ct.App.1995); *See State v. Siering,* 35 Conn.App. 173, 644 A.2d 958, 961–63 (1994); *State v. Robinson,* 496 A.2d 1067, 1069–71 (Me.1985). Noting the questionable legal validity of the withdrawal-of-consent theory in other jurisdictions and the evidence presented at trial, we do not find that Defendant's trial counsel acted unreasonably in declining to present or rely upon this novel theory.

28. We regard claims (4) through (8) as insufficiently prejudicial to render the trial court's results unreliable. Our disposition of the issue of instructional error precludes a showing of prejudice regarding claim (4). Since we hold that the jury instructions given by the trial court adequately covered Defendant's theory that the entire act of sexual intercourse was consensual, we also conclude that Defendant was not prejudiced by his trial counsel's failure to object to the trial court's refusal of his tendered instruction on the victim's misapprehension that Defendant was her father. *Cf. Lopez,* 122 N.M. at 70, 920 P.2d at 1024 (disposition of issue regarding instructional error precluded showing of ineffective assistance).

29. Regarding claim (5), the failure to object to the treating physician's hearsay statement was insufficiently prejudicial because it was cumulative of the testimony of the victim and other witnesses concerning the offender's identity. *See State v. Martinez,* 99 N.M. 48, 52, 653 P.2d 879, 883 (Ct.App.1982) (admission of objectionable testimony may be harmless error where testimony is cumulative of other evidence). Regarding claim (6), the failure to object to the form of the prosecutor's questions was insufficiently prejudicial because the trial court objected on Defendant's behalf and put a stop to the improper form of questioning.

30. Regarding claim (7), a motion for a new trial on grounds other than newly discovered evidence must be made within ten days after the verdict or within such further time as the trial court may fix during that ten-day period. *See* Rule 5–614 NMRA 1997. The record does not indicate that the trial court extended the time to move for a new trial until the date of the sentencing hearing, more than four months after the verdict was reached, and the trial court's statements regarding its doubts about Defendant's guilt do not constitute "newly discovered evidence." Indeed, a jury's verdict will not be set aside solely on the basis that the trial court is not satisfied beyond a reasonable doubt of the defendant's guilt. *See State v. Garcia,* 84 N.M. 519, 521, 505 P.2d 862, 864 (Ct.App.1972). Hence, we find no

merit to Defendant's claim that he was prejudiced by his trial counsel's failure to move for a new trial in response to the trial court's remarks at the sentencing hearing.

▆ 31. Regarding claim (8), Defendant cites *State v. Hernandez*, 115 N.M. 6, 846 P.2d 312 (1993), to support the proposition that his trial counsel rendered ineffective assistance by failing to call an expert witness on the effects of childhood sexual abuse on the victim. However, in *Hernandez*, 115 N.M. at 17, 846 P.2d at 323, the Court held that, even if it were to assume for the purposes of argument that the failure to call an expert witness fell below the standard of a reasonably competent attorney, the defendant did not show that he was sufficiently prejudiced by this failure. In the present case, a showing of prejudice to Defendant also is lacking for two reasons.

32. First, it is not clear to what extent evidence of the victim's past sexual abuse would be admissible under New Mexico's rape-shield law, NMSA 1978, § 30-9-16 (Repl.Pamp.1994), *see Ramos*, 115 N.M. at 724, 858 P.2d at 100, or other rules of evidence. *See, e.g., State v. Scott*, 113 N.M. 525, 529-30, 828 P.2d 958, 962-63 (Ct.App.1991) (construing SCRA 1986, 11-608(B), and citing general rule that extraneous evidence regarding collateral matters is not admissible). The question of the relevancy of past sexual conduct is not raised by asserting that it exists; Defendant must show a reasonable basis for believing that such conduct is pertinent to a material issue in the case. *State v. Herrera*, 92 N.M. 7, 16, 582 P.2d 384, 393 (Ct.App.1978). In this case, the victim testified that she "knew what was happening" and that she did not "have the Defendant confused with somebody else" when she said "Daddy, Daddy, please stop." Under these circumstances, we find no reasonable basis to conclude that expert testimony regarding the victim's childhood trauma or any psychological counseling she may have received would be probative of her ability to comprehend, know, recall, and correctly relate the truth about the incident at issue. *See Ramos*, 115 N.M. at 724, 858 P.2d at 100.

33. Second, apart from the conjecture of Defendant's appellate counsel, there is nothing in the record to indicate that a defense expert was available to testify regarding the victim's past sexual abuse or what the content of this testimony would have been. Defendant has not made a prima facie case that the testimony of an expert witness would have rebutted the State's evidence to such an extent that it amounts to a showing of prejudice under the second prong of the *Strickland* test. *See Martinez*, 122 N.M. at 484, 927 P.2d at 39 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

▆ 34. Regarding claim (9), we find that Defendant has not established a prima facie case that his trial counsel's alleged hearing problem or failure to listen to the proceedings deprived Defendant of the effective assistance of counsel. *See id.* The record on appeal in this case indicates that the trial court and even the prosecutor took several measures to accommodate trial counsel's needs, such as installing computers and hearing devices in the courtroom, instructing witnesses to speak directly into the microphone, and sending the jury out so the attorneys could speak louder and closer to the microphone during side-bar discussions. In addition, the record shows that trial counsel notified the trial court and directed the speaker to "start over" when he was unable to hear. Defendant admits that "[t]he record does not—cannot—show" the possible times when trial counsel "missed something." Hence, we do not remand on this claim of ineffective assistance.

35. Regarding claim (10), our disposition of Defendant's double jeopardy claim makes it unnecessary to reach the issue of whether Defendant was prejudiced by his trial counsel's failure to move for a directed verdict on the charges of kidnapping and CSP II (commission of a felony). Given our rulings on the issues of instructional error and double jeopardy, the cumulative impact of any errors by Defendant's trial counsel was slight. *See State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995). We conclude from our review of the record that Defendant was not denied effective assistance of counsel.

## III. CONCLUSION

36. For the foregoing reasons, we remand this case to the trial court with instructions to vacate Defendant's conviction and sentence for kidnapping and Defendant's conviction and sentence for CSP II (commission of a felony). We affirm Defendant's remaining conviction and sentence for CSP II (personal injury).

37. **IT IS SO ORDERED.**

PICKARD and BUSTAMANTE, JJ., concur.