This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                      **NO. 28,347**

**MARGARITO AMAYA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Judge.**

After the Memorandum Opinion was filed in this case, Defendant filed a motion to supplement the record. We granted the motion and reviewed the supplemental materials. The opinion filed on April 28, 2010, is withdrawn and the following opinion is substituted therefor.

Following a jury trial, Defendant was convicted of kidnapping in violation of NMSA 1978, Section 30-4-1 (2003), and criminal sexual penetration in the second degree (CSP II) in violation of NMSA 1978, Section 30-9-11(E)(3) (2009). He appeals those convictions. We affirm.

## I.    BACKGROUND

On October 31, 2005, Defendant locked his ex-wife (Victim) in his home, threatened her with violence, and forced her to have intercourse causing Victim significant physical injuries in the process. He was arrested shortly thereafter and charged with kidnapping, CSP II, and battery against a household member. The battery charge was later dismissed. Additional facts will be developed in the context of the issues addressed herein.

Defendant's first trial commenced on May 29, 2007, and resulted in a hung jury. Defendant was retried on November 5 and 6, 2007 and was convicted of the remaining charges. Defendant appeals his convictions.

## II.    DISCUSSION

Defendant submits four arguments: (1) the district court erred in denying his motion to dismiss for violation of his right to a speedy trial; (2) the district court erred in allowing Officer Roberto Diaz (Diaz) to interpret statements made by Defendant during interrogation; (3) the district court erred in denying Defendant's motion to suppress his statements during interrogation because he was not advised of his rights as provided in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); and (4) the evidence was insufficient to support his convictions. We address each in turn.

## A. Speedy Trial

Defendant argues that the district court erred in denying his motion to dismiss for violation of his right to a speedy trial. "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. The Sixth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

*Garza*, 2009-NMSC-038, ¶ 10 (quoting U.S. Const. amend. VI). "Violation of the speedy trial right is only determined through a review of the circumstances of a case,

which may not be divorced from a consideration of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* ¶ 13. "Accordingly, we have adopted the balancing test created by the United States Supreme Court in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]." *Garza*, 2009-NMSC-038, ¶ 13.

> In *Barker*, the United States Supreme Court created a balancing test, in which the conduct of both the prosecution and the defendant are weighed. The Court identified four factors: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated.

*Id.* (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

The *Barker* "formulation necessarily compels courts to approach speedy trial cases on an ad hoc basis" and requires them to reject "inflexible, bright-line approaches to analyzing a speedy trial claim." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "On appeal, we give deference to the factual findings of the district court; nevertheless, we are required to independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated."

4

*Johnson*, 2007-NMCA-107, ¶ 5.

**1.      Length of delay**

Appellate courts consider the length of delay for two reasons:   (1) as "a threshold inquiry that triggers the rest of the analysis" and (2) "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885.  In this case, the State concedes that the delay was "presumptively prejudicial," i.e., that the delay crossed the triggering threshold and analysis of the remaining *Barker* factors is required.  Thus, we continue our inquiry.

"If a court determines that the length of delay is presumptively prejudicial, then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right." *Garza*, 2009-NMSC-038, ¶ 23 (internal quotation marks and citation omitted).  The district court did not address how the length of delay in this matter should be weighed and neither Defendant nor the State addressed this matter on appeal.  To properly evaluate this factor, we must first calculate the length of delay.  *See id.* ¶ 24 ("[c]onsidering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the [s]tate").

The parties agree that Defendant's arrest is the starting point of the delay and that the date Defendant's second trial commenced is its terminus.  This period of delay

is approximately two years. We next consider the extent to which this delay stretched beyond the bare minimum required to trigger judicial examination of the claim. *See State v. Urban*, 2004-NMSC-007, ¶ 20, 135 N.M. 279, 87 P.3d 1061 (noting that the accused shows that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay, "the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim" (internal quotation marks and citation omitted)). This requires us to determine whether Defendant's case should be categorized as simple, intermediate or complex.

Defendant argues that this matter is either simple or intermediate. The State does not specify the type of complexity, but argues that this may be an intermediate case. The bare minimum required to trigger judicial examination of a simple case under the pre-*Garza* guidelines is nine months. *Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991), *modified on other grounds by Garza*, 2009-NMSC-038. We examine this case under the pre-*Garza* guidelines because the charges in this matter were filed before August 13, 2007. *Garza*, 2009-NMSC-038, ¶ 50. The bare minimum for an intermediate case under the pre-*Garza* guidelines is twelve months. *Salandre*, 111 N.M. at 428 n.3, 806 P.2d at 568 n.3. If we conclude this matter is simple, the delay over the bare minimum is nine months. If we conclude this is an

intermediate case, the delay over the bare minimum is twelve months. We need not decide the issue because under either circumstance, this factor weighs against the State. *See Johnson*, 2007-NMCA-107, ¶ 8 (holding that an eleven-month delay over the bare minimum weighs against the state); *State v. Plouse*, 2003-NMCA-048, ¶ 43, 133 N.M. 495, 64 P.3d 522 (holding that a six-month delay beyond the bare minimum weighs against the state).

**2.      Reasons For the Delay**

"Closely related to length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). To properly evaluate this factor, we examine the cause of the delay throughout the proceedings in segments. *See, e.g.*, *State v. Lopez*, 2009-NMCA-127, ¶ 23, 147 N.M. 364, 223 P.3d 361. We evaluate the reasons for delay and weight attributable to each reason, keeping in mind that the state has the duty to make a good faith and diligent effort to bring a defendant to trial. *State v. Laney*, 2003-NMCA-144, ¶ 17, 134 N.M. 648, 81 P.3d 591.

We begin our evaluation using the date of October 31, 2005, when Defendant was arrested. A stipulated order of continuance was entered on May 22, 2006.

Pursuant to that order, and subsequent stipulations, the parties agreed to continuances through February 15, 2007. The State concedes that the time period of six months and twenty-two days between Defendant's arrest and the entry date of the stipulated order of continuance weighs against it. However, the eight months and twenty-four days between the entry of the stipulated continuance order and the date through which the parties stipulated to continuances weighs neutrally. *See State v. Downey*, 2007-NMCA-046, ¶ 40, 141 N.M. 455, 157 P.3d 20 (weighing trial delay neutrally where "both the prosecutor and defense counsel stated they had agreed to an additional extension through the last day set for trial"), *rev'd on other grounds*, 2008-NMSC-061, 145 N.M. 232, 195 P.3d 1244.

The next period of delay is the time between the date the stipulated continuances terminated on February 15, 2007, and Defendant's first trial on May 29, 2007. The State concedes that this three month and thirteen day period also weighs against it.

Defendant's first trial resulted in a hung jury. The second trial commenced on November 5, 2007. The delay between Defendant's first and second trial was five months and seven days. As our rules allow the State six months to retry a Defendant following a mistrial, this delay weighs neutrally. *See* Rule 5-604(B)(3) NMRA ("Time limits for commencement of trial. The trial of a criminal case or habitual

criminal proceeding shall be commenced six (6) months after whichever of the following events occurs latest: . . . if a mistrial is declared or a new trial is ordered by the trial court, the date such order is filed[.]"). *See State v. O'Neal*, 2009-NMCA-020, ¶ 21, 145 N.M. 604, 203 P.3d 135 (filed 2008) (delays caused by no fault of the parties are not weighed against either party).

To summarize, ten months of the twenty-four month delay in this matter weighs against the State. Defendant has not argued that these ten months of delay were intentional. The delay is merely negligent. Therefore, this ten-month period of delay weighs only slightly against the State. *See State v. Wilson*, 2010-NMCA-018, ¶ 31, 147 N.M. 706, 228 P.3d 490 ("The second type [of delay], negligent or administrative delay, is to be weighted less heavily but nevertheless should be considered and is assigned a weight based on its protractedness." (internal quotation marks and citation omitted)). The remaining delay, fourteen months, weighs neutrally and does not count against either party.

**3.      Assertion of the Right**

"[D]efendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Garza*, 2009-NMSC-038, ¶ 31 (internal quotation marks and citation omitted). "[W]e assess the timing of the defendant's assertion and the manner in which the right was asserted

9

[and] . . . accord weight to the frequency and force of the defendant's objections to the delay." *Id.* ¶ 32 (internal quotation marks and citation omitted).

At the hearing on the speedy trial motion, the district court concluded that Defendant did little to assert the right. We agree. The first time Defendant expressly asserted the right was November 2, 2007, five months after his first trial and days before his second trial. The district court also concluded that Defendant asserted the right by opposing the State's request for a rule extension. We disagree with this conclusion. Although we held in *State v. Marquez*, 2001-NMCA-062, ¶ 22, 130 N.M. 651, 29 P.3d 1052, that opposition to a rule extension based on speedy trial grounds is an assertion of the right, we did so because the right to a speedy trial was asserted as the basis for that opposition. Here, Defendant did not cite the right to a speedy trial in his motion opposing the rule extension and, thus, there is nothing on which to base an assertion of the right.

We conclude that Defendant first asserted the right days before his second trial, at the very end of the twenty-four months of delay. Accordingly, we hold that this factor weighs against Defendant. *See Downey*, 2007-NMCA-046, ¶ 44 (holding assertion of right factor against the defendant where the defendant "first asserted his right to a speedy trial when he filed a motion to dismiss . . . eleven days prior to trial and thirty months after . . . arrest").

10

## 4. Prejudice

As evidence of prejudice, Defendant points to the fact that he was detained for eighteen months before trial—the time between the date of his arrest on October 31, 2005, and April 16, 2007. He also argues that upon release, his liberty was restricted because he was required to live with his son and was subject to the standard conditions of release. We assign weight to the fact that a criminal defendant is detained before trial only if the pretrial incarceration is "undue." *Garza*, 2009-NMSC-038, ¶ 35. "[T]he length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration" are considered. *Id.*

While the length of incarceration is significant, Defendant was released prior to trial. We are unpersuaded that the conditions of release were unduly onerous or that the six months Defendant was subject to those conditions was unreasonably prolonged. Furthermore, Defendant has not specifically identified any prejudicial effects flowing from his detention or from his conditions of release. Loss of a job, disruption of family life, and the inability to carry out the activities required to prepare a defense are examples of such effects. *Id.* ¶ 35. There is no evidence that Defendant, who is elderly, was working when he was detained. Defendant does not claim his family life was jeopardized. Although Defendant claims the detention compromised

11

his ability to prepare for trial and that he suffered anxiety, he claims that his defense was compromised in a manner he cannot "prove" or "identify," and he has done nothing to specify any details of his alleged anxiety. Such assertions are insufficiently particularized. *See id.* ("without a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers").

Based on the foregoing, we hold Defendant has not demonstrated a particularized showing of prejudice. As a result, this factor does not weigh in his favor.

**5.      Balancing the Four Factors**

The length of delay beyond the presumptive period weighs in Defendant's favor. Ten of the twenty-four months of delay are attributable to the State, so this factor weighs slightly against the State. The assertion of the right weighs against Defendant, and he has not demonstrated prejudice. Under these circumstances, we reject Defendant's assertion that his right to a speedy trial was violated. *See id.* ¶ 40 ("[The d]efendant failed to show prejudice, and the other factors do not weigh heavily in [the d]efendant's favor. . . . [W]e cannot conclude that [the d]efendant's right to a speedy trial was violated.").

**B.      Diaz's Testimony**

Diaz was asked to conduct Defendant's interrogation because Defendant speaks only Spanish and Diaz is fluent in Spanish. At Defendant's trial, Diaz testified as to his recollection of Defendant's statements during the interrogation. Diaz testified that Defendant admitted to having intercourse with Victim and admitted biting her.

Defendant contends that the district court erred in allowing Diaz to testify in English as to statements Defendant made in Spanish during the custodial interrogation and cites three grounds challenging the admissibility of Diaz's testimony. "Admission of evidence is entrusted to the discretion of the trial court, and rulings of the trial judge will not be disturbed absent a clear abuse of discretion." *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984).

First, Defendant asserts that Diaz's testimony was inconsistent with the official English transcription of the interrogation. Diaz testified as to his understanding of what Defendant said. The jury was able to review the official English transcription of the interview and was free to reject Diaz's testimony in whole or in part. *See State v. Verdugo*, 2007-NMCA-095, ¶ 25, 142 N.M. 267, 164 P.3d 966 ("[I]t is for the fact finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence."). The district court did not abuse its discretion in this regard.

Second, Defendant claims that permitting Diaz to interpret his statements

violated the Court Interpreters Act, NMSA 1978, §§ 38-10-1 through 8 (1985) (the Act). The Act states that "if a non-English speaking person who is a principal party in interest or a witness has requested an interpreter, the appointing authority shall appoint . . . an interpreter certified pursuant to the Court Interpreters Act to interpret or to translate the proceedings to him and to interpret or translate his testimony." Section 38-10-3(A). Officer Diaz was not interpreting the proceedings under the Act. He was testifying in English as to what he understood Defendant said in Spanish during the interrogation. This does not implicate or violate the Act.

Third, Defendant argues that the district court should have suppressed Diaz's testimony because Diaz was not serving as a neutral interpreter. As discussed, Diaz was not acting as Defendant's interpreter. Defendant's citation to *State v. Cervantes*, 814 P.2d 1232 (Wash. Ct. App. 1991) is equally unpersuasive. There, the court of appeals of Washington held that the police may not use a co-defendant as an interpreter while interrogating a defendant at a crime scene for the obvious reason that the co-defendant may not honestly and accurately convey information. *Id.* at 1234-35. The present matter is plainly distinguishable from *Cervantes*. We reject the foregoing contentions and hold that the district court did not err in permitting Diaz to testify as to statements Defendant made in Spanish during the interrogation.

**C.** *Miranda*

14

On appeal, Defendant argues that because his *Miranda* warning was inadequate, his post-arrest statements to Diaz should have been suppressed. The adequacy of *Miranda* warnings is a question of law that we review de novo. *See Verdugo*, 2007-NMCA-095, ¶ 12. Although at trial Defendant made his motion to suppress as an objection to the admission of State's Exhibit 26, during the argument on the motion, Defendant made it clear that he was challenging the adequacy of the *Miranda* warnings. Exhibit 26 is the official English transcription of Diaz's interrogation of Defendant. State's Exhibit 26 was not made part of the record proper and neither was the recording of the interrogation. Accordingly, we originally issued a memorandum opinion in which we held that we could not review Defendant's arguments concerning the district court's ruling on the issue of suppression because of the deficiencies in the record proper.

After our Memorandum Opinion was filed, Defendant filed a motion to supplement the record with the addition of Exhibit 26 and the recording of the interrogation. We granted that motion and agreed to review the merits of Defendant's claim regarding the suppression issue. We turn now to that issue.

According to Defendant, Exhibit 26 shows that the *Miranda* warnings Diaz gave Defendant in Spanish varied from the standard warnings. As we explained, Defendant brought this to the district court's attention and objected to the exhibit

15

citing *Miranda*. The district court admitted Exhibit 26 over this objection.

"Under *Miranda*, [p]rior to any questioning, the person must be warned that he has [(1)] a right to remain silent, [(2)] that any statement he does make may be used as evidence against him, and [(3)] that he has a right to the presence of an attorney, either retained or appointed." *State v. Perry*, 2009-NMCA-052, ¶ 13, 146 N.M. 208, 207 P.3d 1185 (first alteration in original) (internal quotation marks and citation omitted). However, *Miranda* warnings are only necessary if a defendant is in police custody at the time of the interrogation. *State v. Snell*, 2007-NMCA-113, ¶ 10, 142 N.M. 452, 166 P.3d 1106. Here, there is no dispute that Defendant was in custody at the time he was questioned by Diaz.

"The defendant may waive [his or her *Miranda*] rights, provided that the waiver is made voluntarily, knowingly, and intelligently, [b]ut unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Verdugo*, 2007-NMCA-095, ¶ 13 (alteration in original) (internal quotation marks and citation omitted). "That means the *Miranda* rights can only be waived by a defendant [a]fter such warnings have been given." *Verdugo*, 2007-NMCA-095, ¶ 13 (alteration in original) (internal quotation marks and citation omitted). "Statements or admissions elicited contrary to the requirements of *Miranda* are subject to suppression on motion of the

16

defendant." *State v. Salazar*, 1997-NMSC-044, ¶ 60, 123 N.M. 778, 945 P.2d 996.

Defendant's contention on appeal is that Diaz failed to accurately recite the required warnings. The English translation of Exhibit 26 indicates that Diaz issued Defendant the following warnings in Spanish:

> You have the right not to say anything, or to remain silent. What you say may be used against me. You also have the right to speak with an attorney, have him present with you. If you don't, if you don't have money to, to pay an attorney, one, the court will, will give you one without, without, uh, with no cost. Also, you have the right to speak with me and not have an attorney here. You also have the right to speak with me and, and answer whatever question, uh, that you want. You also have the right to stop answering questions to speak with your attorney. Do you understand?

It is apparent, based on Exhibit 26, that Defendant was given the requisite warnings. He was told that he: (1) had the right to remain silent; (2) that he had the right to have an attorney present, either retained or appointed; and (3) that his statements could be used against him.

Although the English translation indicates that Defendant was told that his statements could be "used against me," referring to Diaz, this appears to be merely a scrivener's error in the transcription. It should have been formulated to say that Defendant's statements could be used against him. There is no issue in this regard.

Defendant does not argue the absence of the *Miranda* warnings, but rather that the warnings given varied from the standard warnings and were, therefore, deficient.

17

According to Defendant, the warnings were deficient because Diaz instructed Defendant that he had the right to speak with Diaz without an attorney and answer any questions Defendant wished to answer, thus confusing the total explanation of *Miranda* rights.

"The warnings required by *Miranda* . . . deal with substance, not form," *State v. Briggs*, 81 N.M. 581, 581, 469 P.2d 730, 730 (Ct. App. 1970), and the events surrounding the questioning of a defendant are probative as to the adequacy of the warnings. *Salazar*, 1997-NMSC-044, ¶ 61. Even though Diaz told Defendant that he had the right to speak with Diaz without an attorney present, and despite the fact that this instruction is inconsistent with the warning issued to Defendant that he had the right to remain silent, the record reflects that Defendant understood that he did not have to answer Diaz's questions and could remain silent. This understanding was specifically articulated by Defendant during the interrogation. When asked by Diaz about the circumstances of his divorce from one of his other ex-wives, Defendant responded "[w]ell you say that, that if I don't want to answer a question . . . I don't answer it, right? I'm not going to answer it, okay?"

As noted above, the adequacy of the warnings may be gleaned from the circumstances surrounding the questioning. The circumstances in this case indicate that the *Miranda* warnings issued by Diaz were adequate. Accordingly, we reject

Defendant's argument that the district court erred in denying his motion to suppress.

**D.     Sufficiency of the Evidence**

Defendant argues that the evidence presented was insufficient to support his convictions for kidnapping and CSP II.  With respect to kidnapping, Defendant claims that no evidence was presented showing he prevented Victim's "liberation for a longer period of time or to a greater degree than that which was necessary to commit CSP II."

The jury was instructed that to convict Defendant of kidnapping, it was required to find that

    1.     [Defendant] restrained or confined [Victim] by force, intimidation or deception;
    2.     [Defendant] intended to hold [Victim] against [Victim's] will to inflict death, physical injury or a sexual offense on [Victim];
    3.     This happened in New Mexico on or about the 31st day of October 2005.

To convict Defendant of CSP II, the jury was instructed it was required to find that

    1.     [Defendant] caused [Victim] to engage in sexual intercourse;
    2.     [Defendant] caused the insertion of his penis into the vagina of [Victim] through the use of physical force or physical violence;
    3.     [Defendant's] acts resulted in personal injury to [Victim];
    4.     This happened in New Mexico on or about the 31st day of October 2005.

The jury was not required to find, as Defendant contends, that Victim was restrained for a longer period of time than necessary to commit CSP II in order to convict Defendant for kidnapping.  Defendant's argument that they were required to do so is

19

without merit.

Defendant cites *State v. Crain*, 1997-NMCA-101, 124 N.M. 84, 946 P.2d 1095, and *State v. Pisio*, 119 N.M. 252, 889 P.2d 860 (Ct. App. 1994), to support his claim that the evidence was insufficient to support the kidnapping conviction. These cases involve double jeopardy and the charges of kidnapping and CSP. *Crain*, 1997-NMCA-101, ¶ 1; *Pisio*, 119 N.M. at 255, 889 P.2d at 863. We fail to see how these authorities are relevant to Defendant's claim that the evidence was insufficient to support his kidnapping conviction.

"We reject as unworthy of extended discussion Defendant's cursory argument that the evidence was insufficient" to prove he was physically capable of committing CSP II and that his version of the events should have prevailed at trial. *State v. Flores*, 2010-NMSC-002, ¶ 16, 147 N.M. 542, 226 P.3d 641. Diaz testified that Defendant admitted having intercourse with Victim and admitted biting her. Victim testified that Defendant locked her in his home against her will, threatened her, forced her to have intercourse with him using physical force, and she received injuries in the process. This Court "does not substitute its judgment for that of the jury: [c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and

citation omitted).

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

21